## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**STATE AUTO PROPERTY &**
**CASUALTY INSURANCE COMPANY,**

     **Plaintiff,**

**v.**                                 **Case No. 3:19-CV-773-NJR**

**SHORES BUILDERS, INC., and**
**ROCK BRANCH IRONWORKS, INC.,**

     **Defendants.**

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Motions for Judgment on the Pleadings filed by Plaintiff State Auto Property & Casualty Insurance Company ("State Auto") against Defendants Shores Builders, Inc. ("Shores") (Doc. 45) and Rock Branch Ironworks, Inc. ("Rock Branch") (Doc. 46). Rock Branch also filed a Motion to Dismiss as Moot, or in the Alternative for Summary Judgment (Doc. 64). For the reasons set forth below, State Auto's motions are denied, and Rock Branch's motion is denied.

### FACTUAL & PROCEDURAL BACKGROUND

This is an action for declaratory judgment filed by State Auto to determine whether it has a duty to defend Shores and Rock Branch in an underlying state court action (Doc. 23).[1] State Auto issued a policy of insurance to Rock Branch as the named

---

[1] The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The underlying complaint prays for damages in excess of $50,000 in accordance with

insured for the effective policy period of April 17, 2018 to April 17, 2019 (*Id.* at p. 3). Rock Branch entered a Subcontract Agreement ("Agreement") with Shores on or about April 25, 2018, for construction and other services (*Id.* at p. 6). As part of the Agreement, Rock Branch agreed to name Shores as an additional insured on its insurance policy with State Auto and to indemnify Shores in connection with Rock Branch's services (*Id.* at pp. 6-7).

On September 20, 2018, Matthew Smith, an employee of Rock Branch, was fatally electrocuted while on the job. Smith's survivors subsequently brought suit against Shores and others in the Circuit Court of the 20th Judicial Circuit, Randolph County, Illinois (*Id.* at p. 8). Originally, the state court lawsuit alleged Shores was negligent on several grounds, including failure to ensure Rock Branch, its subcontractor, was competent to perform its work and that Shores failed to inspect the equipment that Rock Branch used on the project (*Id.*).

After tendering its defense in the state court action to its own liability insurer, Shores tendered its defense to State Auto, which State Auto refused to accept (*Id.*). Shores then filed a third-party complaint against Rock Branch in the state court action, seeking

---

state court procedure, but seeks those damages for wrongful death. Thus, it does not appear to a "legal certainty" that "the claim is really for less than the jurisdictional amount." *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (*quoting St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). Plaintiff State Auto Property & Casualty Insurance Company ("State Auto") is an Iowa corporation with its principal place of business in Columbus, Ohio. Defendant Shores Builders, Inc. ("Shores") is an Illinois corporation with its principal place of business in Centralia, Illinois. Defendant Rock Branch Ironworks, Inc. ("Rock Branch") is an Illinois corporation with its principal place of business in Illinois. Rodney Smith, the plaintiff in the underlying state court action, was initially named as a nominal party to this action but later dismissed by agreement of the parties (*see* Doc. 46). Smith is an Illinois citizen.

damages for contribution and breach of contract for failure to procure insurance (*Id.* at p. 9).

On July 17, 2019, State Auto filed its Complaint for Declaratory Judgment in this case seeking a declaration that it owes no duty to defend Shores in the state court case (Doc. 1). On November 25, 2019, State Auto amended its complaint adding Rock Branch and seeking a declaration that it owes no duty to defend Rock Branch in the state court case (Doc. 23). On March 3, 2020, State Auto filed its Motion for Judgment on the Pleadings against Shores arguing that the certificate of insurance issued to Shores confers no rights and the underlying complaint does not trigger coverage under the additional insured endorsement (Doc. 45). On that same day, State Auto filed a Motion for Judgment on the Pleadings against Rock Branch arguing that the indemnity provision within the Agreement does not qualify as an "insured contract" as defined by the insurance policy and, as a result, Exclusions e. and b. of the policy apply (Doc. 46).[2]

On or around April 6, 2020, Smith's survivors in the underlying action sought leave to file an amended complaint (Doc. 60-1). On April 13, 2020, Shores filed a supplement to its Memorandum in Opposition of State Auto's Motion for Judgment on the Pleadings notifying the Court that Smith's survivors sought leave to amend the underlying complaint (Doc. 60). State Auto responded explaining the following:

> If the Randolph County court denies the underlying claimant's motion, then the motion will have no impact on either pending Motion for Judgment on the Pleadings (Docs. 45 & 46).

---

[2] Exclusion e. of the insurance policy generally excludes coverage for bodily injuries to Rock Branch's employees (Doc. 23-1, p. 90). Exclusion b. generally excludes coverage for bodily injuries for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement (*Id.*).

> If the Randolph County court grants the underlying claimant's motion, State Auto's Motion for Judgment on the Pleadings as to Shores is still viable and relevant to determine whether State Auto has a duty to defend Shores which would include an obligation to reimburse Shores' reasonable and necessary defense costs incurred from the date of tender until the filing of the amended complaint in Randolph County.

(Doc. 61, p. 2).

On June 2, 2020, the Randolph County Circuit Judge entered an order granting leave and allowing Smith's survivors to amend the underlying complaint (Doc. 64-2). Shores then filed an amended third-party complaint against Rock Branch in the state court action, adding an implied indemnity count (Doc. 64-3). On August 10, 2020, Rock Branch filed its Motion to Dismiss as Moot, or in the Alternative for Summary Judgment, arguing that "State Auto's Complaint for Declaratory Judgment in the instant case was filed and based on allegations of the underlying lawsuit's initial complaint" and "[t]he amended complaint filed in Randolph County makes State Auto's Complaint for Declaratory Judgment moot and its Motion for Judgment on the Pleadings moot" (Doc. 64). State Auto responded that its "Motion for Judgment on the Pleadings (Doc. 46) is still relevant to determine whether State Auto had any duty to defend prior to the filing of the amended third-party complaint" (Doc. 65, p. 3). State Auto also noted that it is preparing a motion for leave to file its Second Amended Complaint and "asks this Court to grant its motion for leave to file its Second Amended Complaint within 30 days and deny Rock Branch's motion" (*Id.*). The Court has not received State Auto's motion for leave to amend.

## LEGAL STANDARDS

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989). The Court must view all of the facts in a light most favorable to the non-moving party. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). The Court may only grant the motion "if it appears beyond doubt that the [nonmovant] cannot prove any facts that would support his claim for relief." *Buchanan–Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

## ANALYSIS

### I.   State Auto's Motion for Judgment on the Pleadings as to Shores

#### A.  The Rights of Shores Under the Certificate of Insurance

Shores did not oppose State Auto's Motion for Judgment on the Pleadings as to whether the certificate of insurance issued to Shores confers any rights (Doc. 54). Pursuant to Local Rule 7.1(c), a party's "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." The Court deems Shores's failure to respond and oppose these arguments as an admission of the merits of State Auto's argument regarding the certificate of insurance. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). The certificate of insurance, however, is not determinative of whether State Auto has a duty to defend Shores because the underlying complaint may trigger coverage under the additional insured endorsement.

**B. The Underlying Complaint Triggering Coverage Under the Additional Insured Endorsement**

In a diversity case, the Court applies state law to substantive issues. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013). Here, the parties have not raised a conflict of law issue and have instead briefed the issues on the merits under Illinois law. The Court, as a result, will apply the law of Illinois.

"In a declaratory judgment action . . . where the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy." *Pekin Ins. Co. v. Wilson*, 930 N.E. 1011, 1016-17 (Ill. 2010). "If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). "Under Illinois law, courts liberally construe both the terms of an insurance policy and the allegations in the underlying complaint in favor of the insured." *Natl. Am. Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015).

In its Motion for Judgment on the Pleadings as to Shores, State Auto argues that "Shores only qualifies as an additional insured under the State Auto policy if it may be vicariously liable for Rock Branch's acts or omissions" (Doc. 45, p. 6). To find that an

insurer owes a duty to defend an additional insured based on the additional insured's potential vicarious liability, two requirements must be met. *Pekin Ins. Co. v. Centex Homes*, 72 N.E.3d 831, 840 (Ill. App. Ct. 2017).

"First, there must be a potential for finding that the named insured was negligent and, second, there must be a potential for holding the additional insured vicariously liable for [ ] [the named insured's] negligence." *Id*. "[I]n order to meet the first requirement, the underlying complaint need not expressly allege that the named insured was negligent." *Id*. "Instead of requiring explicit allegations of negligence by the named insured, [Illinois] [courts] [have] found it sufficient that the underlying complaint contained facts to support a theory of recovery for the underlying plaintiff based on the negligence of the named insured." *Id*. (citing *Pekin Ins. Co. v. CSR Roofing Contractors, Inc.*, 41 N.E.3d 559, 572-73 (Ill. App. Ct. 2015)). The second requirement is satisfied "where the complaint alleges that the additional insured had control of operations and was liable for the actions of its agents. . . ." *Centex Homes*, 72 N.E.3d at 846. For instance, in *Centex Homes*, the second requirement was met where the underlying complaint alleged that the additional insured caused the injury "by and through its agents," and the pleadings alleged that the named insured might be one of those agents. *See id*. (noting that "[t]he potential exists, consistent with these allegations, that a jury could find that [the named insured] was negligent in the erection of the balloon wall, that [additional insured] retained sufficient operative control over that element of construction such that [the named insured] was its agent, and that therefore [additional insured] was vicariously

liable for the negligence of its agent").

Under the amended underlying complaint, the first requirement is met because Smith's successors allege that Rock Branch negligently and carelessly provided Smith with unsafe electrical equipment—including welding leads and cords that had exposed or uninsulated wiring (Doc. 60-1, p. 6). The second requirement is met because Smith continues by alleging that Shores, as the general contractor, exercised control over Rock Branch such that Shores was liable for Rock Branch's negligent acts and omissions (*Id.*). Because the factual allegations in the amended underlying complaint state a vicarious liability claim that falls within the coverage of the insurance policy, State Auto has a duty to defend Shores.[3]

State Auto further asks this Court to clarify whether the duty to defend includes an obligation to reimburse Shores's defense costs incurred from the date of tender until the filing of the amended underlying complaint in Randolph County. If State Auto is asking this Court whether its duty to defend is limited based on the amended underlying complaint, then the answer is no, and State Auto has an obligation to reimburse Shores. *See Robert R. McCormick Found. v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*, 52 N.E.3d 649, 652 (Ill. App. Ct. 2016) (noting that "[i]f the facts alleged in the underlying complaint fall within, or potentially within, the policy's zone of coverage, then the insurer is obligated to defend the insured for the entire action").

---

[3] Indeed, State Auto admits in its Motion for Judgment on the Pleadings as to Shores that "[t]he additional insured endorsement . . . covers Shores for any vicarious liability based on Rock Branch's acts or omissions" (Doc. 45, p. 6).

If, however, State Auto is asking this Court whether its duty to defend is limited based on the <u>original</u> underlying complaint—which is no longer operative—State Auto is asking something entirely different. Illinois courts have consistently explained that "[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." *Bowman v. County of Lake*, 193 N.E.2d 833 (Ill. 1963). This Court's analysis is constrained to the amended underlying complaint. *See e.g., Homeland Ins. Co. of New York v. A Tec Ambulance, Inc.*, 2017 WL 3918212 , at *3 (N.D. Ill. Sept. 6, 2017) (using plaintiff's fourth amended complaint, which is the operative complaint in the underlying suit); *Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664, 668-69 (Ill. App. Ct. 2012) (addressing the duty to defend only as to the amended complaint, but the parties did not address the duty to defend the original complaint); *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 147 F. Supp.3d 708, 713 (N.D. Ill. 2015) (analyzing the allegations of the third amended complaints in the underlying lawsuit, which were the operative complaints, with the insurance policy).

In fact, the Court has been unable to locate any case applying Illinois law that limited an insurer's duty to defend based on the original underlying complaint. Instead, if there is an amended underlying complaint, then Illinois courts determine an insurer's duty to defend based on the new operative complaint. *See e.g., CSR Roofing Contractors, Inc.*, 41 N.E.3d at 572-73 (finding that the insurer owed the general contractor a duty to defend under the additional insured endorsement and acknowledging that "the

amended complaint contains allegations suggesting potential negligence on the part of [the named insured]: specifically, the [underlying plaintiffs] allege that [the named insured] failed to provide adequate safety gear in violation of OSHA regulations"); *Pekin Ins. Co. v. Johnson-Downs Constr., Inc.*, 87 N.E.3d 295, 300 (Ill. App. Ct. 2017) (noting that "[t]he factual allegations in the amended complaint state a vicarious liability claim that falls within the coverage of the insurance policy, and therefore, [plaintiff]'s amended complaint was not an improper or unsupported attempt to plead into coverage"). This is consistent with Illinois jurisprudence that "suggest[s] that an insured is entitled to new consideration of the insurer's duty to defend when the complaint in the underlying action is amended." *Walsh Const. Co. of Illinois v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 153 F.3d 830, 833 (7th Cir. 1998) (citing *Illinois Farmers Ins. Co. v. Preston*, 505 N.E.2d 1343, 1348 (Ill. App. Ct. 1987); *Millers Mut. Ins. Ass'n of Illinois v. Ainsworth Seed Co.*, 552 N.E.2d 254, 257–58 (Ill. App. Ct. 1989)).

Even if this Court evaluates the original underlying complaint, State Auto would still have a duty to defend and is obligated to reimburse Shores's defense costs incurred from the date of tender until the filing of the amended complaint. The first requirement, the potential for a finding that the named insured was negligent, is still met because the original underlying complaint alleges Smith was working for Rock Branch and it was during his welding of the wall anchor brackets onto support bridges that he was electrocuted (Doc. 23-4, pp. 1-2). The original underlying complaint continues by alleging that Shores was negligent for failing to ensure that its subcontractor was competent to

perform its work and failing to inspect the equipment the subcontractor used on the project, which was defective and caused the accident (Doc. 23-4, p. 2). It makes no difference that the original underlying complaint in this case could also support a theory of direct liability against Shores or that there are no direct allegations against Rock Branch. *See Centex Homes*, 72 N.E.3d at 842 (noting that "[i]t makes no difference that the underlying complaint in this case could also support a theory of direct liability against [additional insured] or that there are no direct allegations against [named insured]").

The second requirement, the potential for holding the additional insured vicariously liable for the named insured's negligence, is still met even if this Court uses the original underlying complaint. As discussed in *Centex Homes*, this Court does not need to parse out the original underlying complaint for allegations of a specific amount or type of control by the additional insured over the named insured.[4] Rather, the "[Illinois] Supreme Court made clear, an insurer owes a duty to defend if the claim is 'potentially within policy coverage.'" *Id*. at 846 (quoting *Midwest Sporting Goods Co.*, 828 N.E.2d at 1098).

Liberally construing the allegations in the underlying original complaint in favor

---

[4]The court in *Centex Homes* acknowledged a number of reasons for "not parsing the underlying complaint for allegations of a specific amount or level or type of control by the additional insured over the named insured . . . ." *Id*. at 844-45. "First, this approach is consistent with well-settled principles differentiating an insurer's broad duty to defend from the far narrower duty to indemnify." *Id*. "Second, . . ., the coverage determination must be made without deciding any significant issues in the underlying case." *Id*. at 845 (citing *CSR Roofing*, 41 N.E.3d at 573). "Third, the same kind of allegations that would support direct liability under section 414 also support vicarious liability under the laws of agency." *Id*. "Fourth, even a cursory review of recent cases confirms that vicarious liability has been imposed on general contractors or owners for the negligence of subcontractors based on allegations similar to the boiler plate allegations that are present in the [underlying] complaint." *Id*.

of the insured, the potential exists that Shores could have been vicariously liable for Rock Branch's negligence. Smith's successors even alleged that Shores "failed to insure that its sub-contractor was competent to perform the work they were hired to perform" and "failed to inspect the equipment the sub-contractor used on the project" (Doc. 23-4, p. 2). Because the factual allegations in the original underlying complaint could be construed that Shores is vicariously liable, the claim falls potentially within the coverage of the insurance policy.

More importantly, if the original or amended underlying complaint does not meet the two requirements, this Court can look beyond the underlying complaint in order to determine an insurer's duty to defend. *Wilson*, 930 N.E.2d at 1019 ("concluding that a circuit court may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend . . . ."). Illinois courts have explained that when an employer, like Rock Branch, is not alleged to have been negligent, "the trial court must construe the underlying complaint within the context of the immunity provided by the Workers' Compensation Act." *Core Constr. Servs. of Illinois, Inc. v. Zurich Am. Ins. Co.*, 126 N.E.3d 694, 700 (Ill. App. Ct. 2019) (citing *Centex Homes*, 72 N.E.3d at 840).

In this case, Shores was the general contractor and Rock Branch was a subcontractor. Pursuant to their agreement, Rock Branch was subcontracted to complete the structural steel of the construction project (Doc. 23-3, p. 1). Rock Branch named Shores as an additional insured under its policy for bodily injury caused, in whole or in part, by Rock Branch's acts or omissions (Doc. 23-3). Smith, one of Rock Branch's employees, was

injured at the construction site while working with a piece of equipment (Doc. 23, p. 8). Smith did not directly allege that Rock Branch was negligent in the original underlying complaint. However, "the allegations of the underlying complaint must be read with the understanding that the employer may be the negligent actor even where the complaint does not include allegations against that employer." *See Centex Home*s, 72 N.E.3d at 840 (noting that the lack of allegations as to named insured's acts or omissions "must be understood as the possible result of tort immunity for employers under the workers' compensation laws and should not be a basis for refusing to defend an additional insured").[5]

Not only do the factual allegations in the amended underlying complaint state a vicarious liability claim that falls within the coverage of the insurance policy, but also State Auto's duty to defend is not limited based on the allegations of the original underlying complaint. Accordingly, State Auto's Motion for Judgment on the Pleadings as to Shores is denied.

## II.    State Auto's Motion for Judgment on the Pleadings as to Rock Branch

### A.    *Application of "Insured Contract" Exception to the Exclusions*

The two contracts central to State Auto's Motion for Judgment on the Pleadings as

---

[5] "Further, a court considering whether a duty to defend is owed may look beyond the allegations of the complaint and take notice of unpleaded but uncontested facts, including evidence obtained during discovery and the *allegations of third-party complaints*, so long as the court does not actually determine ultimate questions of liability." *Illinois Constructors Corp. v. United Fire & Cas. Co.*, 2019 WL 6907427 (Ill. App. Ct. 2019) (emphasis added) (citing *Wilson*, 930 N.E.2d at 1020 ("not only the contents of third-party complaints in the underlying action but other evidence may be considered in determining the insurer's duty to defend")). Here, the second element can be met whether this Court considers the facts alleged in the original or amended third-party complaint because both support a theory that Shores is vicariously liable for Rock Branch's negligence (Docs. 23-6, 64-3).

to Rock Branch are (1) the Agreement between Shores and Rock Branch and (2) the policy purchased by Rock Branch from State Auto.[6] The policy purchased by Rock Branch from State Auto generally excludes coverage for bodily injuries to Rock Branch's employees in Exclusion e. (Doc. 23-1, p. 90). Additionally, State Auto generally excludes coverage for bodily injuries for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement in Exclusion b. (*Id*.). The exclusions, however, do not apply where liability is assumed by the insured under an "insured contract" (*Id*.). This is known as the "insured contract" exception.

State Auto argues that the Agreement is not an "insured contract" because Rock Branch promised to indemnify Shores for liability incurred due to Rock Branch's acts or omissions (Doc. 46). State Auto continues noting that the Agreement is only an "insured contract" under State Auto's policy if Rock Branch promises to assume the tort liability of Shores for Shores's own acts or omissions (*Id*.). As a result, Exclusions e. and b. apply and exclude any duties under the policy.

---

[6] The Agreement between Shores and Rock Branch contains the following provision:

> To the fullest extent permitted by law. Subcontractor agrees to indemnify, defend and hold harmless Shores Builders, Inc., the Owner, the Architect and all of their parents, subsidiaries, affiliates, agents, officers and employees from and against all claims, damages, losses, penalties, intellectual property law violations, and expenses, including, but not limited to, attorney's fees and court costs, arising out of, or resulting from, the performance, or failure in performance, of Subcontractor's Work and obligations as provided in the Contract Documents, including any extra Work, and from any claim, damage, loss or expense which (1) is attributable to bodily injury, sickness, disease, death, injury to or destruction of tangible property including the loss of use resulting therefrom, and (2) is caused in whole or in part by any acts, omissions or negligence of Subcontractor or anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable regardless of whether it is caused in part by the acts, omissions or negligence of a party indemnified hereunder. Such obligations shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph 5.6.

(Doc. 23-3, p. 5).

State Auto is incorrect, and its use of *Virginia Sur. Co. v. N. Ins. Co. of New York*, 866 N.E.2d 149 (Ill. 2007), is imprecise. In *Virginia Sur. Co.*, the Illinois Supreme Court had to determine whether the construction subcontract agreement was an "insured contract" under the policy. To do so, the Court compared the subcontract agreement between the parties to the policy's definition of "insured contract." *Id*. at 158. The subcontract agreement required the subcontractor to indemnify and hold harmless the general contractor from damages arising out of the subcontractor's negligence. *Id*. at 151. The insurance policy defined "insured contract" as:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) *under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization*. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Id*. at 152 (emphasis added). Based on this definition of "insured contract," the Court held that the subcontract agreement was not an "insured contract" because the subcontractor was not assuming the general contractor's "tort liability" in the subcontract agreement. *Id*. at 158-61. The Court continued noting that the subcontractor was only assuming the general contractor's liability from damages arising out of the subcontractor's own negligence. *Id*. at 158-59.

The rule from *Virginia Sur. Co.* is not that an "'insured contract' is one where the insured agrees to indemnify the other party against that party's own negligence." *Id*. at 156. Instead, *Virginia Sur. Co.* and Illinois precedent show that "for an insured contract exception to apply, a court must look to both the insurance policy and the purportedly

insured contract." *Century Sur. Co. v. Bucks, Inc.*, 2014 WL 11776967, at *6 (S.D. Ill. July 10, 2014). Only if the language in the Agreement meets the definition of "insured contract" in the insurance policy will the "insured contract" exception put State Auto under a duty to defend the underlying action. *See id.* (acknowledging that "[o]nly if the insurance policy's language covers the contract and the contract unequivocally indemnifies a party against its own negligence will an insured contract exception put a contracting party under a duty to defend or indemnify against an underlying negligence action") (citing *Virginia Sur. Co.*, 866 N.E.2d at 158-59).

Here, the language in the Agreement meets the definition of "insured contract" in the insurance policy. State Auto's policy defines an "insured contract" as "the part of any other contract or agreement . . . under which you assume the tort liability of another party . . . provided the 'bodily injury' or 'property damage' is caused, in whole or in part, by you or by those acting on your behalf" (Doc. 23-1, p. 104). The Agreement meets this definition because Rock Branch contracted to indemnify Shores for any injury sustained by any person as a result of Rock Branch's acts or omissions (Doc. 23-3).[7] Accordingly, the "insured contract" exception to Exclusions e. and b. apply.

**B.      The Construction Contract Indemnification for Negligence Act (740 ILCS 35/1) ("Act")**

State Auto further argues that "if the Court finds that the Agreement is an 'insured

---

[7] At least one case has applied Illinois law and interpreted a definition of "insured contract" like the definition in State Auto's policy to note that the proviso might bring a subcontract within the definition of "insured contract." *See Acuity v. Lenny Szarek, Inc.*, 128 F.Supp.3d 1053, 1064 (N.D. Ill. 2015) (acknowledging that it would seem that the proviso requiring the named insured to assume the tort liability of another party that "is caused in whole or in part, by you or by those acting on your behalf" would bring the subcontracts within the definition of "insured contract").

contract' then the Agreement falls within the [Act] and the indemnification provisions are void as against public policy" (Doc. 46, p. 9). Under the Act, "every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." 740 ILCS 35/1. In other words, the Agreement would have to require Rock Branch to indemnify Shores for Shores's own negligence to be void under the Act.

State Auto, however, argues in its same Motion for Judgment on the Pleadings as to Rock Branch that "[t]he Agreement does not require Rock Branch to indemnify Shores for Shores's own negligence" (Doc. 46, p. 8). After reviewing the Agreement, this Court agrees. The Agreement did not require Rock Branch to indemnify Shores for Shores's own negligence, thus the Agreement is not void under the Act.

"[A]n indemnity agreement is a contract and is subject to contract interpretation rules." *Virginia Sur. Co.*, 866 N.E.2d at 153. "Under Illinois law, . . . contract terms are interpreted according to their plain meaning unless otherwise defined." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004). Indeed, "the threshold issue is whether the contract is ambiguous." *Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 931 N.E.2d 780, 792 (Ill. App. Ct. 2010). Illinois courts apply the "four corners rule," meaning that a court should look only at the contract's language to determine if an ambiguity exists. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999).

The language in indemnity provisions that have been found void under the Act

Case 3:19-cv-00773-NJR   Document 66   Filed 10/05/20   Page 18 of 20   Page ID #788

include: "caused by, resulting from, arising out of or occurring in connection with the execution of the Work . . . whether or not . . . claims are based upon [the general contractor's] alleged active or passive negligence." *Tanns v. Ben A. Borenstein & Co.*, 688 N.E.2d 667, 669 (Ill. App. Ct. 1997); *see e.g.*, *Juretic v. USX Corp.*, 596 N.E.2d 810, 812 (Ill. App. Ct. 1992) (indemnity provision was void when it contained the following: "arising or in any manner growing out of the work performed . . . whether or not caused or alleged to be caused in whole or in part by the fault or negligence of Owner").

Here, the indemnity provision in the Agreement limits Rock Branch's responsibility to claims "arising out of, or resulting from, the performance, or failure in performance, of *Subcontractor's Work* . . . ." (Doc. 23-3) (emphasis added). Illinois courts have found similar language valid under the Act. *See e.g.*, *W.E. O'Neil Const. Co. v. Gen. Cas. Co. of Illinois*, 748 N.E.2d 667, 669 (Ill. App. Ct. 2001) (indemnity provision was not void under the Act when it contained the following: "caused by, resulting from, arising out of or occurring in connection with *his execution of the Work*"); *Lehman v. IBP, Inc.*, 639 N.E.2d 152, 155-57 (Ill. App. Ct. 1994) (indemnity provision was not void when it contained the following: "arising out of the work to be performed by Contractor hereunder and resulting from the intentional and/or negligent acts or omission of Contractor, its employees and agents"). In fact, in *Virginia Sur. Co.*, 866 N.E.2d at 161, the Illinois Supreme Court held the Act did not prohibit a construction subcontract with the following provision: "arising out of or resulting from performance of the Subcontractor's Work . . . ."

Accordingly, the Agreement is not void pursuant to the Act, and State Auto's Motion for Judgment on the Pleadings as to Rock Branch is denied.

## III.   Rock Branch's Motion to Dismiss, or in the Alternative for Summary Judgment

The scheduling order's deadline for dispositive motions was May 22, 2020 (Doc. 18-1, p. 2). After the deadline, on August 10, 2020, Rock Branch filed its Motion to Dismiss, or in the Alternative for Summary Judgment (Doc. 64). "A schedul[ing] [order] may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). To meet the good cause standard, courts focus on the diligence of the party seeking to amend the scheduling order. *See Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005).

Here, Rock Branch has not shown good cause for its inability to meet the dispositive motion deadline. The deadline was already extended sixty days to July 21, 2020, based on the Court's prior administrative orders. Rock Branch, as a result, had from June 2, 2020—the date the complaint in the underlying action was amended—to July 21, 2020 to bring its dispositive motion. Yet, Rock Branch's motion was filed on August 10, 2020—well after the deadline.

Accordingly, Rock Branch's Motion to Dismiss, or in the Alternative for Summary Judgment is denied.

## CONCLUSION

For these reasons, the Motions for Judgment on the Pleadings (Docs. 45, 46) filed by Plaintiff State Auto Property & Casualty Insurance Company are **DENIED**. Defendant

Rock Branch Ironworks, Inc.'s Motion to Dismiss as Moot, or in the Alternative for Summary Judgment (Doc. 64) is **DENIED**.

The Court will by separate order set this matter for a telephonic status conference for the purpose of setting the final pretrial conference and a firm trial date.

**IT IS SO ORDERED.**

**DATED:  October 5, 2020**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**