IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY,** | |
| **Plaintiff,** | |
| v. | Case No. 3:19-CV-773-NJR |
| **SHORES BUILDERS, INC., and ROCK BRANCH IRONWORKS, INC.,** | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Reconsider filed by Plaintiff State Auto Property & Casualty Insurance Company ("State Auto"). (Doc. 69). State Auto moves the Court to reconsider its order denying State Auto's motion for judgment on the pleadings as to Defendant Rock Branch Ironworks, Inc. ("Rock Branch"). State Auto asserts the Court made a manifest error of law when it found that the Subcontract Agreement ("Agreement") between Rock Branch and Shores Builders, Inc. ("Shores") qualifies as an "insured contract." Rock Branch filed a response in opposition. (Doc. 70). For the following reasons, the Court denies the motion to reconsider.

### RELEVANT BACKGROUND

This is an action for declaratory judgment filed by State Auto to determine whether it has a duty to defend Shores and Rock Branch in an underlying state court action. (Doc. 23). State Auto issued a policy of insurance ("Policy") to Rock Branch as the

named insured for the effective period of April 17, 2018, to April 17, 2019. Rock Branch entered its Agreement with Shores on or about April 25, 2018, for construction and other services.

On September 20, 2018, Matthew Smith, an employee of Rock Branch, was fatally electrocuted while on the job. Smith's survivors subsequently brought suit against Shores and others in the Circuit Court of the 20th Judicial Circuit, Randolph County, Illinois. (*Id.* at p. 8). The amended state court complaint alleges, *inter alia*, that Shores negligently failed to provide a Smith with a safe place to work, with safe and properly maintained equipment, and with proper personal protective equipment, and that it failed to inspect Rock Branch's equipment and to ensure Rock Branch was competent to perform the work it was hired to perform. (Doc. 60-1). It further alleges Shores is vicariously liable for Rock Branch's alleged negligence. (*Id.*)

After tendering its defense in the state court action to its liability insurer, Shores tendered its defense to State Auto, which State Auto refused. (*Id.*). Shores then filed a third-party complaint against Rock Branch in the state court action, seeking damages for contribution and breach of contract for failure to procure insurance. (*Id.* at p. 9).

On July 17, 2019, State Auto filed its Complaint for Declaratory Judgment in this case seeking a declaration that it owes no duty to defend Shores in the state court case. (Doc. 1). On November 25, 2019, State Auto amended its complaint to add Rock Branch as a defendant and to seek a declaration that it owes no duty to defend Rock Branch in the state court case. (Doc. 23). State Auto then filed a motion for judgment on the pleadings, asserting that the indemnity provision within the Agreement between Shores

and Rock Branch does not qualify as an "insured contract" as defined by the Policy. As a result, Exclusions e. and b. of the Policy apply, and Rock Branch is not entitled to coverage.

The Court disagreed, finding that the language in the Agreement met the definition of "insured contract" in the State Auto Policy. (Doc. 66). Accordingly, the exception to Exclusions e. and b. applied, and State Auto had a duty to defend Rock Branch. The Court further found that the Agreement was not void as against public policy because it did not require Rock Branch to indemnify Shores for Shores' own negligence, as prohibited by Illinois's Construction Contract Indemnification for Negligence Act.

State Auto asks the Court to reconsider its conclusion, arguing that the Agreement was not an insured contract because it does not require Rock Branch to assume the liability of Shores. Instead, State Auto asserts, the Agreement's indemnity provision is actually a waiver of Rock Branch's *Kotecki*[1] cap as explained in *Virginia Sur. Co. v. N. Ins. Co. of New York*, 866 N.E.2d 149, 158 (Ill. 2007).[2]

In response, Rock Branch argues that the language in the Agreement meets the definition of "insured contract" found in the Policy, and, therefore, State Auto owes Rock Branch a duty to defend the suit brought against it by Shores. Alternatively, Rock Branch

---

[1] In *Kotecki v. Cyclops Welding Corp.*, 585 N.E.2d 1023 (1991), the Illinois Supreme Court held that an employer's maximum liability in a third-party suit for contribution is limited to its liability to its employee under the Workers' Compensation Act. The Court further held that an "employer may waive its *Kotecki* protection by contract and thereby be liable for its full *pro rata* share of contribution." *Id.*

[2] The Court notes that State Auto did not raise the *Kotecki* waiver issue in its Motion for Judgment on the Pleadings, and arguments raised or developed for the first time in a motion to reconsider are generally deemed forfeited. *Pole v. Randolph*, 570 F.3d 922, 938 (7th Cir. 2009). Nevertheless, for the sake of completeness, the Court will address State Auto's arguments in full.

asserts the policy is ambiguous and must be interpreted in favor of Rock Branch to provide the broadest coverage available.

## LEGAL STANDARD

Motions to reconsider an interlocutory order are properly brought pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, as the rule provides that an order adjudicating fewer than all the claims among the parties "may be revised at any time" before the entry of a final judgment. FED. R. CIV. P. 54(b). Motions to reconsider under Rule 54(b) are judged by largely the same standard as motions to alter or amend a judgment under Rule 59(e) and serve a limited function: to correct manifest errors of law or fact. *See Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987).

"A manifest error is not demonstrated by the disappointment of the losing party." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quotation omitted). A motion to reconsider is only proper where the Court has misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "Such problems rarely arise and the motion to reconsider should be equally rare." *Id.* at 1192 (citation omitted).

## DISCUSSION

To determine whether an insurer's duty to defend an underlying lawsuit has been triggered, a court must compare the allegations in the underlying complaint with the

language of the insurance policy. *Century Sur. Co. v. Bucks, Inc.*, No. 11-CV-0724-MJR-SCW, 2014 WL 11776967, at *4 (S.D. Ill. July 10, 2014) (citing *Lagestee–Mulder, Inc. v. Consolidated Ins. Co.*, 682 F.3d 1054, 1056 (7th Cir. 2012)). If a complaint against an insured contains allegations "that are even potentially within policy coverage, the insurer is obligated to defend the insured." *American Fam. Mut. Ins. Co. v. W.H. McNaughton*, 843 N.E.2d 492, 510 (Ill. App. Ct. 2006); *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 696 (7th Cir. 2009) ("[A]n insurer has a duty to defend its insured if *any* theory of recovery alleges potential coverage."). Any doubts as to whether particular claims fall within the policy are resolved in favor of coverage. *Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 643 (7th Cir. 2007). "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 811 (7th Cir. 2010) (quoting *State Farm Fire & Cas. Co. v. Perez*, 899 N.E.2d 1231, 1235 (Ill. App. Ct. 2008)). With these principles in mind, the Court turns to the relevant portions of the complaint, the Policy, and the Agreement between Shores and Rock Branch.

Here, the amended state court complaint alleges both that Shores committed its own negligent acts or omissions *and* that it is vicariously liable for Rock Branch's alleged negligence. (Doc. 60-1). Shores's third-party complaint against Rock Branch in the state court action seeks damages for contribution and breach of contract for failure to procure insurance. (Doc. 23-6).

The Policy issued by State Auto to Rock Branch then provides that State Auto "will pay those sums that the insured becomes legally obligated to pay as damages because of

'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." (Doc. 23-1 at p. 89). Thus, under the terms of the Policy, State Auto would have a duty to defend Rock Branch against Shores' third-party complaint for contribution, as long as no policy exclusions apply.

Two such exclusions are potentially relevant here. Exclusion b. excludes coverage for bodily injury or property damage for which the insured is obligated to pay damages by reason of assumption of liability in a contract or agreement. And Exclusion e. excludes coverage for bodily injury to an employee of the insured arising out of and in the course of employment by the insured. (*Id.* at p. 90). Both of these exclusions contain an exception for liability assumed by the insured under an "insured contract," which is defined as follows:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, **provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf**. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Doc. 23-1 at p. 104) (emphasis added).

Rock Branch contends the Agreement it entered with Shores is an "insured contract"; State Auto contends it is not. The Agreement contained the following provision:

> To the fullest extent permitted by law, **[Rock Branch] agrees to indemnify,**

> **defend and hold harmless Shores Builders, Inc**. . . . **from and against all claims, damages,** losses, penalties, intellectual property law violations, and expenses, including, but not limited to, attorney's fees and court costs, **arising out of, or resulting from, the performance, or failure in performance, of [Rock Branch's] Work** . . . and from any claim, damage, loss or expense which **(1) is attributable to bodily injury**, sickness, disease, death, injury to or destruction of tangible property including the loss of use resulting therefrom, and **(2) is caused in whole or in part by any acts, omissions or negligence of [Rock Branch] or anyone directly or indirectly employed by [Rock Branch] or anyone for whose acts [Rock Branch] may be liable regardless of whether it is caused in part by the acts, omissions or negligence of a party indemnified hereunder**. . . .

(Doc. 23-3) (emphasis added).

State Auto argues this language does not constitute an "insured contract" because it does not require Rock Branch to assume the tort liability of Shores for Shores' own negligence. State Auto claims that, under *Virginia Surety*, an agreement is only an "insured contract" if the indemnitor indemnifies the indemnitee for the indemnitee's own negligence. *See Virginia Sur. Co. v. N. Ins. Co. of New York*, 866 N.E.2d 149, 158 (Ill. 2007).

Unfortunately, however, this argument ignores the rules of contract interpretation. As noted in *Virginia Surety*, "an indemnity agreement is a contract and is subject to contract interpretation rules." *Virginia Sur. Co.* 866 N.E.2d at 153. "The cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language." *Id.*; *see also Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). Thus, "for an insured contract exception to apply, a court must look to both the insurance policy and the purportedly insured contract." *Bucks, Inc.*, 2014 WL 11776967, at *6.

Under the State Auto Policy, an insured contract is one "under which you assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or

organization, provided the 'bodily injury' . . . is caused, in whole or in part, by you or by those acting on your behalf." In other words, an insured contract is one in which Rock Branch agrees to assume the tort liability of another party for bodily injury to a third party *caused by Rock Branch's own negligence.* That is exactly what Rock Branch agreed to do here: it promised to indemnify Shores for any tort liability to pay for damages to a third party arising from Rock Branch's own negligence.

The analysis in *Virginia Surety* simply is inapposite here, as the court was analyzing different CGL policy language. In that case—and in every case discussed by the Illinois Supreme Court in coming to its conclusion—the definition of "insured contract" did not require, as it does here, that the "bodily injury" or "property damage" be caused, in whole or in part, by the insured. *See id; Hankins v. Pekin Ins. Co.*, 713 N.E.2d 1244, 1248 (Ill. App. Ct. 1999); *Christy–Foltz, Inc. v. Safety Mutual Casualty Corp.*, 722 N.E.2d 1206 (2000); *Michael Nicholas, Inc. v. Royal Insurance Co. of America*, 748 N.E.2d 786 (2001); *West Bend Mutual Insurance Co. v. Mulligan Masonry Co.*, 786 N.E.2d 1078 (2003).

When considering the history of the "insured contract" definition, that makes sense. The Insurance Services Office, Inc. (ISO) introduced a new endorsement, CG 24 26, "Amendment of Insured Contract Definition," in 2004. The endorsement was "intended to eliminate coverage for a CGL insured's assumption, in an indemnity agreement, of liability arising out of the other party's sole negligence." Jack P. Gibson, W. Jeffrey Woodward, *The 2004 ISO Additional Insured Endorsement Revisions*, CONSTR. LAW., Summer 2005, at 5. As explained in CONSTRUCTION LAWYER shortly after the endorsement was introduced, an indemnity agreement qualifies as an "insured contract" under CGL

policy endorsement CG 24 26 if the injury is caused, at least in part, by the insured's act or omission. *Id. See also* INSURANCE COVERAGE OF CONSTRUCTION DISPUTES § 10:13 (2d ed.) ("Under this newly added language, if the insured is not at least partially responsible for the tort committed, for which it has agreed to indemnify another, the 'insured contract' definition may not be satisfied, such that the exclusion bars coverage.").

This reading of the language also makes sense under the Illinois Construction Contract Indemnification for Negligence Act ("the Act"). Under the Act, any promise to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable. 740 ILL. COMP. STAT. § 35/1. Here, Rock Branch agreed to indemnify and hold harmless Shores against all claims arising out of Rock Branch's work and caused, in whole or in part, by Rock Branch. Thus, it does not run afoul of the Act.

While no Illinois court appears to have interpreted the new ISO form language, other district courts have found that the provision extends coverage for agreements concerning vicarious liability. *See, e.g.*, *United Rentals, Inc. v. Mid-Continent Cas. Co.*, 843 F. Supp. 2d 1309, 1314 (S.D. Fla. 2012) (interpreting identical definition of "insured contract"). In *United Rentals*, the court found that coverage was not provided under the "insured contract" exception because the state court complaint alleged only theories of strict liability and negligence arising from the indemnitee's own acts or omissions—not vicarious liability for the acts or omissions of the indemnitor. *Id. See also Leaf River Cellulose, LLC v. Mid-Continent Cas. Co.*, No. 2:11-CV-54-KS-MTP, 2012 WL 1906529, at *5

(S.D. Miss. May 25, 2012) (analyzing identical definition of "insured contract" and finding duty to defend existed).

Here, Smith has alleged that Shores is vicariously liable for Rock Branch's negligence, and Rock Branch agreed to indemnify Shores for all claims for bodily injury caused, at least in part, by Rock Branch's own negligence. Under the terms of the Policy, this is an "insured contract." Thus, the exception to the exclusions apply, and State Auto has a duty to defend Rock Branch against the third-party claims brough by Shores in the underlying litigation.

Any other conclusion would lead to illogical results. As noted by Rock Branch, if the Court were to accept State Auto's definition of "insured contract," then no agreement could *ever* qualify as an insured contract under State Auto's policy language. An insured cannot indemnify the indemnitee for the indemnitee's own acts or omissions, but—at the same time—only do so if the bodily injury is caused by the insured's own acts or omissions. It would be impossible for an insured to satisfy both conditions of the insured contract definition.

Furthermore, if the language at issue were simply a waiver of Rock Branch's *Kotecki* cap, that would render the very next provision of the Agreement superfluous. *See Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) (under Illinois law, courts should "attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous"). That provision states:

> In any and all claims against Shores Builders Inc., . . . by any employee of

> Subcontractor . . . the indemnification obligation under this Paragraph 5.6 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under Worker's Compensation acts . . . .

(Doc. 23-3 at p. 5). The Illinois Court of Appeals has held that this language is a valid *Kotecki* waiver. *Est. of Willis v. Kiferbaum Const. Corp.*, 830 N.E.2d 636, 642 (Ill. App. Ct. 2005). Accordingly, if the Court were to accept State Auto's argument, it would have to find the Agreement between Shores and Rock Branch contains two adjoining paragraphs, with different language, that both constitute a *Kotecki* waiver. Such an interpretation would defy the basic tenets of contract interpretation.

For these reasons, the Court finds that it made no manifest error of law when it found that the Subcontract Agreement between Rock Branch Ironworks, Inc. and Shores Builders, Inc. qualifies as an "insured contract."

## CONCLUSION

The Motion to Reconsider filed by Plaintiff State Auto Property & Casualty Insurance Company (Doc. 69) is **DENIED**.

**IT IS SO ORDERED.**

DATED: May 12, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**